FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2016 AUG 19 A 11: 42

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil Action No. 1:16cv1070 |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| MATTHEW BISSONNETTE, ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION

The United States of America brings this civil action for breach of contract and fiduciary obligations against Defendant Matthew Bissonnette, a former senior non-commissioned officer in the U.S. Navy, who published a book without submitting the manuscript for prepublication review and gave presentations using materials that were not cleared for public release, in violation of his non-disclosure agreements and obligations to the United States.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1345.

2. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(b)(2).

## PARTIES

3. Plaintiff is the United States of America (hereafter "United States" or "Government").

1

4. Defendant Matthew Bissonnette is a former senior non-commissioned officer in the U.S. Navy, which is headquartered at the Pentagon, located in Arlington, Virginia. The Department of Defense's Office of Prepublication and Security Review is also headquartered at the Pentagon.

## FACTUAL ALLEGATIONS

5. Bissonnette served as a chief petty officer and special warfare operator (SEAL) in the U.S. Navy. On January 24, 2007, while assigned to the Naval Special Warfare Development Group, Bissonnette signed four documents: (1) a Classified Information Non-Disclosure Agreement; (2) a Sensitive Compartmented Information Nondisclosure Statement; (3) a Sensitive Compartmented Information Indoctrination Memorandum; and (4) a Personal Attestation, stating that he understood his responsibility to protect classified national security information.

6. Sensitive Compartmented Information (SCI) is information or material protected within Special Access Programs. Special Access Programs are established only for programs required by statute or upon a finding that (1) the vulnerability of, or threat to, specific information is exceptional, and (2) the normal criteria for determining eligibility for access to information classified at the same level are not deemed sufficient to protect the information from unauthorized disclosure. Executive Order 13526 at § 4.3(a). SCI involves or derives from intelligence sources and methods and is classified.

7. In signing the SCI Nondisclosure Statement, Bissonnette expressly agreed to a prepublication requirement. Specifically, he agreed to submit to the Government for pre-publication security review any writing or other preparation in any form that contains or purports to contain SCI or a description of activities that produce or relate to SCI. He

further agreed that his prepublication review obligations would apply while he had access to SCI and thereafter.

8. Bissonnette also agreed in signing these documents that the U.S. Government was entitled to all royalties or other payments resulting from an unauthorized disclosure of classified information, including SCI.

9. By signing the Classified Information Non-Disclosure Agreement and the SCI Nondisclosure Statement, Bissonnette expressly acknowledged that he understood and accepted that the United States Government was placing special confidence and trust in him by granting him access to classified information, including SCI.

10. Bissonnette's prepublication review obligation is reinforced by Department of Defense (DoD) regulations. *See* DoD Directive 5230.09, *Clearance of DoD Information for Public Release* §§ 2.a, 4.b, 4.f (Aug. 22, 2008) (providing that all personnel must submit for security review and clearance proposed books pertaining to military matters or national security).

11. Bissonnette voluntarily, willingly, and knowingly entered into the agreements described herein, which were executed as a condition of his being granted access to classified information, including SCI.

12. During his service with the U.S. Navy, Bissonnette was assigned to various positions of trust and was granted regular access to classified information, including SCI. In assigning Bissonnette to positions of trust and granting him access to classified information, the U.S. Navy relied on the expectation that Bissonnette would abide by the obligations set forth in the agreements described herein and his fiduciary duties, including the prepublication review requirement.

13. On April 20, 2012, Bissonnette signed a SCI Debriefing Memorandum, documenting that he was again reminded of his continuing obligation to comply with the terms of the SCI Nondisclosure Statement that he signed previously.

14. In September 2012, Bissonnette, under the pen name Mark Owen, published a book entitled *No Easy Day: The Firsthand Account of the Mission That Killed Osama Bin Laden* ("*No Easy Day*").

15. Bissonnette was obligated to submit the book to the Government for prepublication security review and not to publish it until receiving written permission to do so.

16. Bissonnette did not, at any time, submit the manuscript for *No Easy Day* to the Government for prepublication security review, nor did he obtain the Government's approval prior to the book's publication.

17. Bissonnette has acknowledged that he was required to seek prepublication review of *No Easy Day* and that he breached his nondisclosure obligations by failing to do so.

18. In January 2013, Bissonnette began giving leadership presentations using slides that contain content related to his service in the U.S. Navy.

19. On March 26, 2013, Bissonnette, through his attorney, submitted the slides from his leadership presentation for prepublication security review, as required by his non-disclosure agreements.

20. Bissonnette was obligated to submit his slides for prepublication security review and not to disclose the information on the slides until he received the Government's written permission to do so. From January to April 23, 2013, Bissonnette

used the content in his slides to give at least six separate leadership seminars before he received written authorization from the Government to publicly disclose the information on the slides.

## CAUSES OF ACTION

### Count One: Breach of Contract and Fiduciary Duty Related to *No Easy Day*

21. All preceding paragraphs are incorporated by reference, as if fully set forth herein.

22. Bissonnette voluntarily, willingly, and knowingly entered into contractual agreements with the United States of America when he signed his Classified Information Non-Disclosure Agreement and SCI Nondisclosure Statement, and other documents described herein, and he agreed to be bound by their terms and conditions. Among those terms and conditions was an express requirement that Bissonnette submit to the Government for prepublication security review any written manuscript containing or relating to classified information, including SCI, and that he refrain from publishing any such manuscript until he received written permission from the Government to do so.

23. Bissonnette breached his Classified Information Non-Disclosure Agreement and SCI Non-Disclosure Statement, and other agreements memorialized in the documents described herein, by failing to submit his *No Easy Day* manuscript to the Government for prepublication security review before disclosing the manuscript to his publisher and causing it to be published.

24. Under the common law and the specific terms of Bissonnette's agreements, Bissonnette had a fiduciary relationship with the United Sates based on trust and special confidence that derived from the facts that Bissonnette was a senior

noncommissioned officer in the U.S. Navy; transacted business on behalf of the Navy; was given access to classified national security information, including SCI; and entered into the Classified Information Non-Disclosure Agreement and SCI Nondisclosure Statement.

25. Bissonnette owed to the United States a fiduciary duty of loyalty to protect from unauthorized disclosure all information pertaining to intelligence sources and methods, to submit to the Government for its review any written material intended for publication that contains or purports to contain classified information or descriptions of activities that produce or relate to classified information, and not to publish or disseminate such material unless and until the Government provided its written approval.

26. Bissonnette breached his fiduciary duties by publishing *No Easy Day* without submitting it for prepublication security review or receiving the Government's permission to publish it.

27. By breaching his contractual and fiduciary duties with regard to *No Easy Day*, Bissonnette has harmed the United States by undermining its ability to use non-disclosure agreements and the prepublication security review process to protect sensitive national security information.

28. Bissonnette has been unjustly enriched by the proceeds and all other financial advantages resulting from the unauthorized publication of *No Easy Day*.

### Count Two: Breach of Contract and Fiduciary Duty Related to Leadership Presentations

29. Paragraphs 1-19 above are incorporated by reference, as if fully set forth herein.

30. Bissonnette knowingly, willfully, and deliberately breached his Classified Information Non-Disclosure Agreement and SCI Nondisclosure Statement, and other documents described herein, by disclosing the slides used in his leadership presentation before the prepublication security review process was completed and prior to receiving written permission from the Government to disclose the information in the slides publicly.

31. Bissonnette also breached his fiduciary duties to the United States by disclosing the slides used in his leadership presentation before the prepublication security review process was completed and prior to receiving written permission from the Government.

32. By breaching his contractual and fiduciary duties with respect to the slides used in his leadership presentations, Bissonnette has harmed the United States by undermining its ability to use non-disclosure agreements and the prepublication security review process to protect sensitive national security information.

33. Bissonnette has been unjustly enriched by the proceeds and all other financial advantages resulting from the leadership presentations where he used slides that had not been approved by DoD.

**WHEREFORE**, the United States of America respectfully requests that the Court award the following relief:

A. Declare that Bissonnette has breached his contractual obligations, embodied in his Classified Information Non-Disclosure Agreement and SCI Nondisclosure Statement, as well as his fiduciary obligations;

B. Impose a constructive trust over, and require an accounting of, all monies, gains, profits, royalties, and other advantages that Bissonnette has derived, or will derive, from the publication, sale, serialization, or republication in any form, including any movie rights, of *No Easy Day*;

C. Require Bissonnette to relinquish the proceeds from *No Easy Day* to the United States;

D. Require Bissonnette to provide an accounting of all monies, gains, profits, royalties, and other advantages that Bissonnette derived from leadership presentations he gave before the Government completed the security review of his slides on April 23, 2015;

E. Require Bissonnette to relinquish the proceeds from leadership presentations he gave before April 23, 2015, to the United States;

F. Permanently enjoin Bissonnette from any further violation of his contractual and fiduciary obligations, including, but not limited to, authorizing, consenting to, or in any way permitting the republication of *No Easy Day*;

G. Grant to the United States such other relief as the Court may deem just and proper, including, but not limited to, the Government's costs herein.

Dated: August 19, 2016            Respectfully Submitted,


                              DANA J. BOENTE
                              United States Attorney

                              BENJAMIN C. MIZER
                              Principal Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

_____
R. JOSEPH SHER
Assistant United States Attorney
U.S. Attorney's Office,
Eastern District of Virginia
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3747
Fax: (703) 299-3983
joe.sher@usdoj.gov

RYAN B. PARKER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

Dated: August 19, 2016

Counsel for the United States