**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:16CV1070 (RDA/IDD) |
| MATTHEW BISSONNETTE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE CONSENT DECREE AND ENTER
SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

## INTRODUCTION

Matthew Bissonnette, a former senior non-commissioned officer in the U.S. Navy, entered into a Consent Decree with the United States, acknowledging that he failed to submit his book for pre-publication review despite agreeing to a requirement that he do so.  The parties entered into that Consent Decree after extensive negotiations to resolve the claims being brought by the United States without further litigation, and Bissonnette agreed to pay to the United States all proceeds from his book, as well as some of the proceeds he received from presentations he delivered that similarly were not approved.  This Court entered that Consent Decree, and this action has accordingly been closed for nearly four years.

Now seeking extraordinary relief, Bissonnette moves to vacate that Consent Decree under Federal Rule of Civil Procedure 60(b), pointing to a settlement agreement in a malpractice lawsuit that he has since reached with his former counsel that purportedly shows that he relied upon that counsel's advice in not submitting his book for review.  According to Bissonnette, that malpractice settlement reflects a significant change since the Court entered the Consent Decree here, entitling him to vacatur of the Decree and to summary judgment in this action.

But Bissonnette cannot show any change warranting such extraordinary relief.  He has long alleged that he relied on his former counsel's advice in not submitting his book for review, including well before he entered the Consent Decree.  Rather than rely on those allegations to litigate this action years ago, Bissonnette agreed to enter the Consent Decree fully aware of the alleged bad advice he received, and he cannot revisit that tactical choice through a motion to vacate an agreement into which he voluntarily entered.  Bissonnette should not be heard to complain otherwise—to the extent he thought that his alleged reliance on his former counsel entitled him to a remedy, he was free to pursue one in his malpractice action, and he did so.  And though

1

Bissonnette cites an excerpt from the settlement in that action to try to exonerate himself, that cryptic statement makes clear that Bissonnette himself bears responsibility for publishing the book without first submitting his manuscript for prepublication review.

This Court should deny Bissonnette's motion to vacate and for summary judgment.

## BACKGROUND[1]

As the Complaint filed in this action lays out, and Bissonnette's motion does not dispute, Bissonnette signed four documents as a condition of his being granted access to classified information while assigned to the Naval Special Warfare Development Group. Compl. ¶¶ 5, 11, ECF No. 1. Specifically, he signed: (1) a Classified Information Non-Disclosure Agreement; (2) a Sensitive Compartmented Information Nondisclosure Statement; (3) a Sensitive Compartmented Information Indoctrination Memorandum; and (4) a Personal Attestation, stating that he understood his responsibility to protect classified national security information. *Id.* Sensitive Compartmented Information, or SCI, is information protected within Special Access Programs and involves or derives from intelligence sources and methods and is classified. Compl. ¶ 6; *see also*

---

[1] Bissonnette's memorandum fails to include a "specifically captioned section listing all material facts as to which [he] contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." LCvR 56(B). Indeed, the "Factual Background" section of his memorandum does not contain any citations to record evidence at all. Mem. of Law in Supp. of Mot. to Vacate Consent Decree & Enter Summ. J. in Favor of Def. ("Mot.") at 2-3, ECF No. 5. Because Bissonnette has failed to meet his obligation under the local rule, and the United States does not contend at this time that "there exists a genuine issue necessary to be litigated," the United States has not included a specifically captioned section concerning disputed material facts in this memorandum. LCvR 56(B). The United States does not concede the veracity of the averments in Bissonnette's "Factual Background."

Bissonnette's motion and accompanying brief do not include page numbers. Any citations to those documents herein refer to the page numbers provided by the ECF filing at the top of each page.

Exec. Order No. 13526 § 4.3(a), 75 Fed. Reg. 707 (Dec. 29, 2009) (discussing establishment of Special Access Programs).

During his service with the U.S. Navy, Bissonnette was assigned to various positions of trust and granted regular access to classified information. *See* Compl. ¶ 12. Bissonnette agreed to submit to the Government for pre-publication security review any writing or other preparation in any form that contains or purports to contain SCI or a description of activities that produce or relate to SCI. *Id.* ¶ 7; *see also* DoD Directive 5230.09, *Clearance of DoD Information for Public Release* §§ 2.a, 4.b, 4.f (Aug. 22, 2008) (providing that all personnel must submit for security review and clearance proposed books pertaining to military matters or national security). He also agreed in signing these documents that the Government was entitled to all royalties or other payments resulting from the unauthorized disclosure of classified information. Compl. ¶ 8.

In September 2012, Bissonnette published the book *No Easy Day: The Firsthand Account of the Mission That Killed Osama Bin Laden*. *Id.* ¶ 14. Despite an obligation to first submit that book for prepublication security review, Bissonnette failed to do so. *Id.* ¶¶ 15-16; *see also* Mot. at 2 ("This action arises from Bissonnette's failure to obtain a proper pre-publication review by the Department of Defense ('DoD') prior to publication."). A few months later, he similarly began giving leadership presentations before receiving written Governmental authorization to use slides containing content related to his service in the U.S. Navy. Compl. ¶¶ 18-20. Bissonnette thus violated his obligations, and the United States brought this civil action against him for breach of contract and fiduciary duty.

After extensive negotiations, the parties entered into a Consent Decree to resolve this action without further litigation. *See* Consent Decree at 2, ECF No. 2. This Court entered that decree on September 23, 2016, making it an Order of this Court. *See id.* ¶ 11. In the Consent Decree,

Bissonnette agreed to issue a public statement "acknowledging that he was required to seek prepublication review of *No Easy Day* and that he made a mistake by failing to do so." *Id.* at 2. In exchange for the United States releasing, with specific exceptions, Bissonnette from civil liability related to his book's publication and the specified leadership presentations, Bissonnette agreed to "pay to the United States any and all revenues, gains, profits, royalties, and other financial advantages derived by [him], or derived by [him] in the future, from the sale, serialization, republication rights in any form, television or movie rights, and other distribution for profit of *No Easy Day*." Consent Decree ¶¶ 3, 9. He further agreed to "pay the Government all of the proceeds he ha[d] already received from the publication of *No Easy Day*," *id.* ¶ 5, including a nearly $1.38 million payment due by September 23, 2020, *see id.* ¶ 5(B). And he agreed to pay some of the proceeds that he received from the leadership presentations he gave without prior approval of the slides he used. *See id.* ¶ 7.

Although this action has been closed for nearly four years, Bissonnette now moves to vacate that Consent Decree pursuant to Federal Rule of Civil Procedure 60(b), as well as for entry of summary judgment. *See generally* Mot.

## STANDARDS FOR VACATING JUDGMENT

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" for one of six grounds enumerated in the rule. "In order to obtain relief under Rule 60(b), the moving party must first satisfy a four-part threshold test" requiring that the movant demonstrate: "(1) timeliness; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances." *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07CV612 (JCC), 2008 WL 2557999, at *2 (E.D. Va. June 23, 2008) (citing *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d

4

46, 48 (4th Cir. 1993)). As the Fourth Circuit has explained, "[d]istrict courts must rigorously examine the[] four predicate requirements because we have characterized Rule 60(b) as 'extraordinary' and to be used only in 'exceptional circumstances.'" *Coomer v. Coomer*, 217 F.3d 838, 2000 WL 1005211, at *4 (4th Cir. July 20, 2000) (per curiam) (unpublished) (citing *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)). "After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)." *Dowell*, 993 F.2d at 48.

Bissonnette specifically moves to vacate the Consent Decree pursuant to Rule 60(b)(5), which as relevant here allows the Court to relieve a party from an order if "applying it prospectively is no longer equitable." As the party seeking modification, Bissonnette bears the burden of showing that "a significant change in circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992). He may try to demonstrate a "significant change either in factual conditions or in law." *Id.* at 384. If he can make such a showing, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. "If the movant cites significantly changed factual conditions, it must additionally show that the changed conditions make compliance with the consent decree 'more onerous,' 'unworkable,' or 'detrimental to the public interest.'" *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 220 F.3d 241, 247 (4th Cir. 2000) (quoting *Small v. Hunt*, 98 F.3d 789, 795 (4th Cir. 1996) & *Rufo*, 502 U.S. at 384)); *see also Salazar v. District of Columbia*, 685 F. Supp. 2d 72, 76–77 (D.D.C. 2010) ("[T]he *Rufo* Court carefully delineated the three conditions under which modification of a consent decree under Rule 60(b)(5) may be appropriate . . . .") (citing *Rufo*, 502 U.S. at 384).

5

Assuming Bissonnette's motion for summary judgment is reached, that motion should be denied where the movant fails to establish that there is no genuine issue of material fact or an entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## ARGUMENT

I. **Bissonnette's Alleged Reliance on Advice of His Prior Counsel Does Not Support Vacating the Consent Decree.**

Bissonnette requests that this Court vacate the Consent Decree, arguing that a settlement agreement in a malpractice lawsuit that he has since reached with his former counsel purportedly shows that he relied upon that counsel's advice in not submitting his book for prepublication review.  According to Bissonnette, that settlement "is a significant change in the basis for the Consent Decree," and thus the Order should be vacated.  Mot. at 8.

Bissonnette's argument fails.  Bissonnette has long claimed to have detrimentally relied on bad legal advice from his former counsel—including well before he entered the Consent Decree— and his subsequent settlement does not reflect a "significant change" warranting relief under Rule 60(b)(5).  Moreover, his motion ignores—and does not meet his burden of establishing—the four-part threshold test for relief under Rule 60(b), and it should also be denied on that basis as well.

A. **Bissonnette Fails to Establish a Significant Change of Factual Circumstances Under Rule 60(b)(5).**

Modification of a prior court order "should not ordinarily be granted 'where a party relies upon events that actually were anticipated at the time it entered into a decree.'" *Thompson*, 220 F.3d at 247 (quoting *Rufo*, 502 U.S. at 385).  Indeed, "[b]ecause the standard is an exacting one, many applications for relief on this ground are denied, particularly when the court finds that the changed circumstances were contemplated at the time the decree was entered." 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2863 (3d ed.)

(endnotes and citations omitted). This Court should similarly deny Bissonnette's motion because he plainly was aware of the very circumstances he now relies upon when he agreed to the Consent Decree.

As his motion acknowledges, "Bissonnette has continually maintained he relied upon the advice of counsel" in publishing his book without review, Mot. at 10, including "[a]t the time [the] Consent Decree was entered into," *id.* at 7; *see also* Decl. of Matthew Bissonnette ("Bissonnette Decl.") ¶ 5, ECF No. 5-1. Indeed, Bissonnette filed *two* malpractice actions against his former attorney *before* the parties entered the Consent Decree. After his first action was dismissed for lack of personal jurisdiction, *see Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 629 (S.D.N.Y. 2015), he filed his second in the Northern District of Indiana in November 2015, *see Bissonnette v. Podlaski*, No. 1:15-cv-00334-SLC, 2018 WL 2688583, at * 6 (N.D. Ind. June 5, 2018); *see generally* Docket, *Bissonnette v. Podlaski, et al.*, No. 1:15-cv-00334-SLC (N.D. Ind.).[2] Bissonnette also issued a public apology upon entering the Consent Decree where he stated, in part, "I acted on the advice of my former attorney, but I now fully recognize that his advice was wrong." Carrie Johnson, *Former Navy SEAL Settles with Authorities Over Bin Laden Raid Book*, NPR, Aug. 19, 2016.[3] And in November 2014, Bissonnette publicized his alleged reliance on his former attorney's advice in an appearance on the television program 60 Minutes, where he and his subsequent counsel[4] stated "that Bissonnette did not submit a manuscript of the Book to the

---

[2] Bissonette's assertion that he filed his second action after he entered the Consent Decree, Bissonnette Decl. ¶ 6, is incorrect.

[3] Available at https://www.npr.org/sections/thetwo-way/2016/08/19/490487058/former-navy-seal-settles-with-authorities-over-bin-laden-raid-book (last visited September 15, 2020).

[4] This new counsel, Robert D. Luskin, represented Bissonnette during the extensive negotiations that concluded in the agreement to enter the Consent Decree.

government for prepublication review because Bissonnette received bad legal advice from his former attorney." *Bissonnette*, 2018 WL 2688583, at *5.

Thus, at the time he entered the Consent Decree in August 2016, Bissonnette plainly contemplated the very argument he makes again in support of vacatur—that he relied on bad advice from his counsel in not submitting his book for review—and he therefore cannot rely on those grounds nearly four years later to vacate that agreement. *See Rufo*, 502 U.S. at 388 (rejecting argument that decision in a case "was a change in law requiring modification" where movants "were undoubtedly aware" the case "was pending when they signed the decree" and "[t]hus[] the case must be judged on the basis that it was immaterial to petitioners"); *Sec. & Exchange Comm'n v. Tsao*, 317 F.R.D. 31, 35 (D. Md. 2016) (denying motion to vacate consent order, explaining that the case movant relied on existed at time he agreed to the order and reasoning that movant "could have raised" the issue "at the time of the settlement or litigated"), *aff'd*, 671 F. App'x 157 (4th Cir. 2016).

The fact that Bissonnette has since entered a settlement agreement with his former counsel on his malpractice claims does not transform his longstanding position into a "significant change" that can support vacating the Consent Decree. "A modification of a consent decree must be based on a change in *facts*, not a change in opinion about the effect of unchanged facts." *Thompson*, 220 F.3d at 247. Here, "[t]he reasons" Bissonnette now relies upon—that his counsel allegedly provided him bad advice—"all existed before the entry of the consent decree" and thus "cannot be considered a change of circumstance." *Id.* at 247-48 (holding movant's "post-Decree 'discovery'" that public housing development could not be rehabilitated was not a change in circumstances because the reasons for that determination existed at time of consent decree, notwithstanding the issuance of a subsequent report on the topic). Rather than agree to the Consent Decree, Bissonnette

8

could have litigated this action and tried to assert his purported reliance on counsel as a defense to non-compliance with his prepublication review obligations. But he declined to do so, and his subsequent, unilateral decision to settle his malpractice claim does not constitute a change in facts that meets Rule 60's exacting standard. *See id.* at 247-48; *see also Agostini v. Felton*, 521 U.S. 203, 215-17 (1997) (rejecting argument that "exorbitant costs of complying with the District Court's injunction constitute a significant factual development warranting modification of the injunction" because it was known at the time the injunction issued that additional costs would be incurred). Put another way, the fact that he settled a claim with his former attorney—which Bissonnette ostensibly regards as some type of admission that he in fact got bad advice—is neither a new circumstance nor one that prevented him from raising precisely this defense before he accepted judgment against him in this case.

Moreover, a motion to vacate "cannot serve as an attempt to relitigate the merits." *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests . . . ."). Yet Bissonnette effectively seeks to do just that, apparently regretting his "factual assumptions and positions" in entering the Consent Decree, Mot. at 2, and claiming that his former attorney's "denials undermined [his] ability to assert the affirmative defense that [he] had relied in good faith on the advice of counsel," Bissonnette Decl. ¶ 5. But he cannot obtain vacatur of the Consent Decree by second-guessing his litigation tactics from nearly four years ago, and "a consent decree will not be modified simply because 'it is no longer convenient to live with [its] terms.'" *Thompson*, 220 F.3d at 247 (quoting *Rufo*, 502 U.S. at 383).[5]

---

[5] Bissonnette also asserts that "since the Consent Decree was entered, the assumptions [of] both parties relied upon have significantly changed." Mot. at 7. But the United States' assumptions have not changed. In entering the Consent Decree, the United States did not rely on Bissonnette's

9

In sum, Bissonnette cannot show a "significant change" warranting relief under Rule 60(b)(5). And notwithstanding his assertion to the contrary, *see* Mot. at 8, for the reasons explained below, Bissonnette likewise cannot make the additional necessary showing that any purportedly "changed conditions make compliance with the consent decree . . . detrimental to the public interest." *Thompson*, 220 F.3d at 247 (internal quotation marks omitted).

### B. Bissonnette Fails to Satisfy Other Requirements for Obtaining Relief Under Rule 60(b).

Even if Bissonnette could show a significant change in circumstances since he entered into the Consent Decree—and he cannot—he fails to meet his burden of establishing the factors required for obtaining relief under Rule 60(b) more generally. *See Buffalo Wings Factory, Inc.*, 2008 WL 2557999, at *2 ("In order to obtain relief under Rule 60(b), the moving party must first satisfy a four-part threshold test" requiring that the movant demonstrate: "(1) timeliness; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances.").

First, Bissonnette's motion is untimely. Bissonnette reached a settlement in his malpractice action more than two years before he filed this motion. *See* ECF 5-1 ("Exhibit A to Settlement Confirmation Letter" dated June 29, 2018). Moreover, Bissonnette has known for more than a

---

dispute with his former counsel, and the suggestion to the contrary lacks support. Under Virginia law, a contract may only be set aside on the basis of mistake if there is a *mutual* mistake, or in the case of unilateral mistake, if the other party committed fraud. *See Ward v. Ward*, 239 Va. 1, 3 (1990). To the extent the Court views the Consent Decree as a type of contract between the parties, there was no mutual mistake because the United States fully understood that Bissonnette contended that he had received bad advice from his counsel but believed he was nonetheless liable. And there also is no allegation that the United States in any way defrauded Bissonnette, who was well represented by counsel in entering the Consent Decree.

10

year that the United States would not agree to modify the Consent Decree.[6] "Courts in this circuit have rigorously enforced this timeliness requirement," and Bissonnette "must offer a satisfactory explanation for any delay." *Hanan v. United States*, 402 F. Supp. 2d 679, 687 & n. 19 (E.D. Va. 2005) (collecting cases), *aff'd*, 213 F. App'x 197 (4th Cir. 2007). He fails to offer any explanation here for his delay of more than a year from when the United States first advised him that it would not modify the Consent Decree, and the Court should deny Bissonnette's motion as untimely. *See McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991) (per curiam) ("We have held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay.").

Second, contrary to Bissonnette's contention that enforcing the Consent Decree "goes against public interest," Mot. at 8, *setting aside* the Consent Decree would prejudice the United States and harm the public interest, and advantage only Bissonnette himself. To the extent that Bissonnette thinks his former counsel's advice entitles him to a remedy, he had a path available to pursue one: a malpractice action against that attorney. And having brought that action, he was able to secure a settlement. But whatever relief he received in that separate action does not allow him to walk away from his prior agreement to enter the Consent Decree and litigate an issue that he could have raised all along. *See Lloyd v. Carnation Co.*, 101 F.R.D. 346, 348 (M.D.N.C. 1984) ("In balancing the competing interests of finality and judgments based on all the facts, the Court must keep in mind that Rule 60(b) is not meant to relieve any litigant of strategic or tactical decisions which later prove to be improvident."). Indeed, vacatur would be inequitable—and thus

---

[6] In response to an initial request by Bissonette's counsel to modify the Consent Decree, counsel for the United States informed Bissonnette in April 2019 that it would not do so. Bissonnette renewed his request to the United States' counsel to modify the Consent Decree in June 2020 before filing this motion.

11

contrary to Rule 60(b)(5)—because Bissonnette already obtained some measure of relief from his former counsel through the settlement agreement that he chose to execute.

Third, Bissonnette fails to demonstrate that he has a meritorious defense to the United States' claims in its Complaint in this action. He does not dispute that he in fact failed to submit his manuscript for prepublication review—a requirement to which he agreed. He argues instead that the malpractice settlement agreement shows that he "justifiably relied on the advice of counsel in failing to follow his contractual obligations." Mot. at 2. But rather than disclose the entire agreement, Bissonnette provides only an "[e]xhibit . . . to [a] Settlement Confirmation letter." Bissonnette Decl. ¶ 8 & Ex. A. That cryptic statement shows that while his attorney acknowledged having a role in the decision to publish the book without review, Bissonnette also "has acknowledged his responsibility for publishing the book without a review by the Government." *See* Bissonnette Decl. Ex. A. Thus, the very excerpt from his malpractice settlement that he relies upon to vacate the Consent Decree expressly acknowledges that Bissonnette bears responsibility for his failure to submit the manuscript for review.

In any event, Bissonnette is mistaken that "it has been well established that good faith reliance is a defense" that he can rely upon here. Mot. at 8. The cases that he highlights all involved claims other than breach of contract and breach of a fiduciary duty—the causes of action that formed the basis for the United States' Complaint in this case. *See* Compl. ¶¶ 21-33. For example, *7600 Ltd. P'ship v. QuesTech, Inc.*, 41 Va. Cir. 60 (Va. Cir. 1996) involved a claim of malicious prosecution, and in that specific context, found that advice of counsel mattered. In reaching that conclusion, the Circuit Court relied on *Pallas v. Zaharopoulos*, 219 Va. 751, 755 (1979), in which the Virginia Supreme Court explained: "When a defendant, in initiating a prosecution, acts in good faith upon the advice of reputable counsel, after a full disclosure of all

12

material facts, he has probable cause to support his action. Probable cause serves as a complete defense to an action for malicious prosecution, even if the advice given by the attorney is wrong." Of course, the existence of probable cause is irrelevant to breach of contract and fiduciary duty claims.

The remaining cases on which Bissonnette relies required showings of specific intent that do not apply to the claims at issue in this case. *See United States v. Newport News Shipbuilding, Inc.*, 276 F. Supp. 2d 539, 560, 565 (E.D. Va. 2003) (claims under False Claims act requiring "knowingly" submitting false claims); *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010) (false marking statute requires marker act "for the purpose of deceiving the public"). But here, the United States alleged Bissonnette violated his contractual and fiduciary duties, Compl. ¶¶ 21-33, and he fails to show why his intent would be relevant in litigating those claims, *see, e.g.*, *Eldridge v. Gordon Bros. Grp., LLC*, 863 F.3d 66, 88 (1st Cir. 2017) ("'[p]roving a breach of contract claim does not' (repeat, does *not*) 'depend on the breaching party's mental state.'") (*quoting ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442, 444 (Del. Ch. 2012), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013)); *DeHart v. Moore*, 424 F. Supp. 55, 57 (S.D. Fla. 1976) ("In general, to establish breach of contract one need not establish any particular mental state . . . .").

Finally, there are no "exceptional circumstances" present. Bissonnette agreed to the Consent Decree "[a]fter extensive negotiations," forfeiting all of his profits from the book because he breached his obligation to seek prepublication review. Consent Decree at 2 & ¶¶ 2-3, 5. And he continues to acknowledge his "failure to obtain a proper pre-publication review" and "to follow his contractual obligations." Mot. at 2. The Court should reject his attempt to second guess his

13

litigation tactics, hold him to the agreement he freely entered nearly four years ago, and deny his motion to vacate.

## II. Bissonnette Cannot Move for Summary Judgment in this Closed Case, and His Reliance on Threadbare Allegations Would Fail to Support Judgment in His Favor.

Bissonnette's request that this Court enter summary judgment in his favor likewise lacks support and would fail in any event. As an initial matter, his motion is procedurally improper for at least two reasons. First, there is no further judgment for this Court to render because this action is closed. "[T]he Parties have consented to th[e] decree to resolve the issues raised by the Complaint without further litigation," Consent Decree at 2, and Bissonnette cannot use a motion to vacate to relitigate this case on the merits. *See supra* Part I. Second, Bissonnette's motion ignores this Court's requirement that a summary judgment brief "include a specifically captioned section listing all material facts as to which [he] contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed," LCvR 56(B), and thus should be denied for that reason as well. *See CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13CV346, 2015 WL 4717256, at *4 & n.3 (E.D. Va. Aug. 7, 2015) ("In response to a movant's blatant violation of Local Rule 56(B), the Court may deny a motion for summary judgment outright.") (collecting cases).

In any event, Bissonnette's motion for summary judgment should plainly fail even if the Court were to consider it. He acknowledges his "failure to obtain a proper pre-publication review" and "to follow his contractual obligations." Mot. at 2. And the failure to comply with his prepublication review obligations amounts to a breach of his contractual and fiduciary duties to the United States. *See, e.g.*, *United States v. Snowden*, --- F. Supp. 3d ---, 2019 WL 8333546, at

14

*5-7 (E.D. Va. Dec. 17, 2019); *see also, e.g.*, *United States v. Snepp*, 444 U.S. 507 (1980) (per curiam).

 Once again, Bissonnette's argument hinges on his assertion that he acted "in good faith reliance on the advice of counsel, rather than with intent to breach his obligations." Mot. at 10. But as explained above, he has not shown the relevance of his alleged intent here. And even if he could, he fails to show that he should not have been held accountable for his breach, as his partial disclosure of the malpractice settlement agreement explicitly acknowledges "his responsibility for publishing the book without a review by the Government." Bissonnette Decl. Ex. A. Indeed, in the Consent Decree itself, Bissonnette acknowledged that he was required to seek prepublication review and that he made a mistake in failing to do so, agreeing to issue a public statement to that effect. *See* Consent Decree at 2. Similarly, he recognized his responsibility upon entering the Consent Decree in publicly stating that, "'I accept responsibility for failing to submit the book for review and apologize sincerely for my oversight.'" Christopher Drew, *Ex-SEAL Member Who Wrote Book on Bin Laden Raid Forfeits $6.8 Million*, N.Y. Times, Aug. 19, 2020.[7] Thus, to the extent his intent were relevant, this is a clear reflection of his state of mind at the time the Decree was entered. For these reasons, even if it were appropriate to consider his motion for summary judgment at this stage, Bissonnette cannot show that he is entitled to summary judgment as a matter of law. *See Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) ("[W]e view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.").

---

[7] Available at https://www.nytimes.com/2016/08/20/us/bin-laden-book-seal-team-6.html?searchresultposition=1 (last visited September 14, 2020).

## CONCLUSION

For the foregoing reasons, the Court should deny Bissonnette's motion to vacate the consent decree and, if reached, his motion for summary judgment.

Dated: September 16, 2020

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

_____/s/_____
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Email: lauren.wetzler@usdoj.gov

KEVIN M. SNELL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 305-0924
Fax: (202) 616-8460
Email: Kevin.Snell@usdoj.gov

*Counsel for Plaintiff*