**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:16CV1070 (RDA/IDD) |
| MATTHEW BISSONNETTE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S  REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO**
**VACATE CONSENT DECREE AND ENTER**
**SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

## INTRODUCTION

The instant motion seeks to correct an injustice – a consent judgment that was entered based on false factual premises and agreed to by a Defendant who, although innocent, was being threatened with baseless criminal charges.  In the time since the entry of this unjust consent judgment, the threats of criminal prosecution were dropped, as it was clear that Defendant committed no crime.  Moreover, the false factual premise – that Defendant knowingly breached his contract after being advised by his attorney that he was obligated to comply, has been conclusively proven false.

While the majority of the factual allegations have always been undisputed, at issue are the instructions given to Mr. Bissonnette by Kevin Podlaski ("Podlaski"), his former attorney, and his reliance upon that advice. Plaintiff's opposition ignores the factual reality, both of underlying allegations, as well as the Government's own actions[1] in pursuing Mr. Bissonnette.  The

---

[1] To be clear, the attorneys currently appearing for the Government were not part of the team that mishandled this case at its earlier stage.  Thus, nothing in this submission should be considered as an accusation against Mr. Snell or his colleagues.  On the contrary, due to their relatively recent entry into the case, Defendant expects that they may have

unfortunate and inescapable reality is that the Government relied upon knowingly and materially false statements made by Podlaski during his proffer sessions.  In an effort to escape consequences for the fact that he had improperly counseled multiple clients, including Bissonnette, to violate their agreements with the Government and forego pre-publication book review, Mr. Podlaski flagrantly violated both his ethical responsibilities and 18 U.S.C. §1001 by lying to federal investigators.

In their efforts to hold on to over $5 million that had been earmarked for charities that would benefit the families of fallen Special Operations warriors, the Government is essentially endorsing Podlaski's false statements and condoning his criminal and unethical behavior. Tellingly, aside from the general comment in a footnote that "the United States does not concede the veracity of the averments in Bissonnette's 'Factual Background,'" the Plaintiff has failed to raise any substantive challenge to those facts or raise a single allegation of fact or citation to evidence that undermines the now unavoidable conclusion – that Defendant justifiably relied on the advice of his attorney.

## ARGUMENT

### I.        Bissonnette's Reliance on Advice of Counsel Does Support Vacating the Consent Decree.

Bissonnette requests the Court vacate the Consent Decree noting the facts surrounding Bissonnette's entry into the Consent Decree have significantly changed based on legal malpractice lawsuit involving his former counsel, Kevin Podlaski.  Though Bissonnette has long claimed to

---

been misled by the work of their predecessors.  As discussed more fully *infra*, the depositions of Podlaski and Plaintiff in the related malpractice action completely eviscerate the Plaintiff's original position on this case and it is our hope that, by including them as exhibits, the current representatives of the Government will understand the issue and either join in this application or work towards a reasonable settlement.

have detrimentally relied on the advice of counsel, the facts surrounding his detrimental reliance were hotly contested, apparently due to the fact that Podlaski lied to Government investigators.

The truth of both Podlaski's duplicitous conduct and Bissonnette's reliance upon his fatally flawed advice was revealed after the entry of the consent decree through a legal malpractice claim. Throughout discovery, Podlaski tried desperately to prevent Bissonnette from obtaining any information about his felonious communications with the Government, fighting a motion to compel, then a motion for reconsideration.  Ultimately, Podlaski's dishonest attempts to avoid responsibility were exposed through his deposition, where he was caught in several lies when confronted with his own emails.[2]  What is troubling is that the deposition also revealed the Podlaski provided the Government with a complete copy of his attorney-client file as well, presumably including the same emails that quickly decimated his false story at his deposition.

Bissonnette has clearly met his burden of establishing the four-part threshold test for relief under Rule 60(b) and should be granted Summary Judgment.

### A.  Significant Change of Factual Circumstances Under Rule 609(b)(5)

Modification of a prior court order "should not be ordinarily granted 'where a party relies upon events that actually were anticipated at the time it entered into a decree.'" *Thompson,* 220 F.3d. at 247 (quoting *Rufo,* 502 U.S. at 385) According to *Rufo*, a "significant change in the circumstances warrants revision of the decree," either through "a significant change either in factual conditions or law." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992).  While Plaintiff stands on the ground that Bissonnette has long claimed to have detrimentally relied on bad legal advice and thus does not reflect a "significant change" warranting relief under Rule 60(b)(5), Plaintiff could not be more wrong.

---

[2] A copy of the deposition is annexed hereto at Exhibit "A."

At the time that the consent decree was entered into, Podlaski was providing false testimony against his own client to negate this fact-specific defense and, although the Government had a copy of the entire attorney-client file, they were not only giving Podlaski a free pass on his false statements, but encouraging and allowing him to continue to make these false statements and prevent Bissonnette from effectively raising his defenses.  It was not reasonably anticipated at the time that, having committed a felony under 18 U.S.C. §1001 by lying to Government investigators that Podlaski would open himself up to prosecution, especially since the Government had openly embraced his false narrative.  What has changed is that, through the malpractice litigation, Podlaski was forced to reverse course and admit his role in advising Bissonnette.[3]

Bissonnette has maintained he relied upon the advice of counsel in publishing his book without review, Mot. at 10, including the time when he agreed to the Consent Decree.  Bissonnette did in fact file two malpractice actions against his former attorney before entering into the Consent Decree, however the first malpractice suit was dismissed for lack of jurisdiction, see *Bissonnette v. Podlaski,* 138 F. Supp. 3d 616, 629 (S.D.N.Y. 2015).  Bissonnette subsequently filed a second malpractice suit in the Northern District of Indiana in November 2015, during the same time he was negotiating the Consent Decree with Plaintiff.  *See Bissonnette v. Podlaski*, No. 1:15-cv-00334-SLC, 2018 (N.D. Ind. June 5, 2018).  Throughout this entire time, Podlaski continually and vehemently maintained no involvement in Bissonnette's failure to submit *No Easy Day* for pre-publication review, rather Podlaski actively stated he was not involved in the decision.  Meanwhile Bissonnette was facing a criminal investigation which threatened his family and spearheaded his decision to enter into a Consent Decree.

---

[3] Additionally, as his false statements to DOJ are now just over five years old, Podlaski can now speak the truth to DOJ without fear of criminal prosecution under 18 U.S.C. §1001.

In his deposition taken November 17, 2016, Podlaski stated he was interviewed by the DOJ in December 2014 (Podlaski Dep. p. 28) whereby Podlaski filed a Motion for Reconsideration to avoid disclosing the information he submitted to the DOJ in a continued effort to conceal his dishonest, unethical and illegal conduct.  Though Bissonnette continually relied upon his reliance on counsel, the scope of Podlaski's involvement in misleading the DOJ were not available until much later.  Additionally, during the Summary Judgment hearing, Podlaski's attorney informed the Judge that Podlaski never met with the DOJ, another lie which Bissonnette's attorney corrected on the record further enforcing Podlaski's deceptive acts.

Bissonnette relies upon a change in *facts* not merely a change of circumstance as Plaintiff relied upon in *Thompson*, 220 F.3d at 247 (holding a modification of a consent decree must be based on a change in facts, not a change in opinion about the effect of unchanged facts.) There is no dispute as to Bissonnette's holding that Podlaski provided erroneous information to which he detrimentally relied, rather there is the change in fact that Podlaski knowingly lied to the DOJ regarding his involvement and, although they had the file which could have been used to easily impeach these false statements, DOJ continued to threaten Bissonnette with baseless potential criminal charges and pressure to enter into a Consent Decree.

Proving exceptional circumstances has a heavy burden.  In  *Buffalo Wings Factory, Inc. v. MOHD,* 1:07cv612 (JCC) (E.D. Va. June 23, 2008) Defendant's attorney lied and entered into a Consent Decree without Defendants permission proving to be an exceptional circumstance. It would stand to reason the DOJ, who was in possession of the client file of Podloski, knowing Podloski did state to Bissonnette and his publisher "the author has no legal obligation to submit the manuscript to any agency of the U.S. Government for review or approval…" (Podlaski Dep. p. 115) and whereby knew Bissonnette relied on the erroneous advice of Counsel would prove to

be exceptional circumstances. An email from Elyse Cheney, publisher, stated "The Indiana lawyer suggested that Mark definitely not tell anyone in the Command Office that he's doing a book." (Podlaski Dep. p.85) further supporting the exceptional circumstances in this matter. Additionally, Podloski admitting, during his deposition, that he did in fact tell Bissonnette it was okay to submit his book without pre-publication and further admitting his provided answers in the sworn interrogatories were incorrect and misstated would also be exceptional circumstances (Podlaski Dep. p.69). Specifically, in an email to Bissonnette's counsel, Mark Luskin, Podlaski states:

> "Having been in Special Operations over 12 years, Mark was very confident that he was not going to address or describe any classified or classifiable information in the manuscript, and with my recommendations, Mark decided not to send the manuscript to USSOCOM or Office of Security Policy Review, OSPR"

Podlaski Dep. p. 57

Only through discovery was Bissonnette able to identify the information surrounding DOJ's knowledge of Podloski's role and Podloski's continual denial and habitual lying to federal officers. Bissonnette would not have had the information regarding DOJ and Podloski's involvement without the attorney Malpractice case. At no point would Bissonnette have been able to anticipate the changing facts of the matter when he agreed to the Consent Decree.

### B.  Bissonnette Does in fact Satisfy the Other Requirements for Obtaining Relief Under Rule 60(b)

"In order to obtain relief under Rule 60(b), the moving party must first satisfy a four-part threshold test" requiring that the movant demonstrate: "(1) timeliness; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances." See Buffalo Wings Factory, Inc., 2008 WL 2557999, at *2.  Plaintiff contends that Bissonnette does not meet his burden of satisfying the four-part threshold test; however, Bissonnette has more than met each element required to obtain relief under Rule 60(b)

Under FRCP Rule 60(b)(5) motions may be brought at any time. The party seeking relief bears the burden of showing the motion was filed within a reasonable time. *Hanan v. United States*, 402 F. Supp. 2d 679, 687 (E.D. Va. 2005).  In *Hanan* it was held that the party must offer a satisfactory explanation as for any delay.  *Id*.  Bissonnette tried for more than 12 months to have the consent decree modified in good faith, before seeking judicial intervention.  Bissonnette first tried to resolve the matter with the DOJ through his former attorney, Robert Luskin.  Mr. Luskin communicated with the DOJ on numerous occasions for approximately a year before reaching an impasse.  In March 2020 when the world closed due to COVID-19, Bissonnette's ability to earn a living was obliterated.  Bissonnette's main source of income was public speaking engagements and as our states closed and conferences were cancelled, Bissonnette suddenly found himself without income and a Consent Decree which was agreed to based on manipulated information by the DOJ and Podlaski.  Bissonnette again approached the DOJ in an effort to modify the Consent Decree but was unsuccessful. With no options left, Bissonnette timely filed the Motion to Vacate after exhausting all other legal avenues.

Second, contrary to the stance of the United States, enforcing the Consent Decree does in fact go against public interest and setting aside the Consent Decree would not prejudice the United States and harm public interest.  The Department of Justice's mission statement is to seek punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.  The DOJ was made aware of Podlaski's erroneous legal advice when he turned over all client files to them.  Specific to the files were a series of emails between Podlaski and Cheney whereby he stated "the author has no legal obligation to submit the manuscript to any agency of the U.S. Government for review or approval..." (Podlaski Dep. p.115).  Podlaski continued to deny any involvement, lying to federal officials, and DOJ was apprised of the matter.

Setting aside the Consent Decree would not prejudice the United States but show the government will ensure that Justice is served.   Bissonnette is not attempting to re-litigate an issue that could have been raised all along as the United States argued citing *Lloyd v. Carnation Co*., 101 F.R.D. 346, 348 (M.D.N.C. 1984) ("In balancing the competing interests of finality and judgments based on all the facts, the Court must keep in mind that Rule 60(b) is not meant to relieve any litigant of strategic or tactical decisions which later prove to be improvident."), as this issue was not known to Bissonnette at the time he entered into the Consent Decree, therefore it would have been unable to be raised.  As such, Vacating the Consent Decree would be equitable.

While Bissonnette does acknowledge that he now knows he committed an error in failing to submit the manuscript for review, the United States has unequivocally missed the point that accepting responsibility does not negate reliance on advice of counsel.   "The purpose of a meritorious defense requirement is to ensure that granting relief from the judgment under Rule 60(b) would not "in the end [be] a futile gesture." *Buffalo Wings Factory, Inc. v. MOHD*, 1:07cv612 (JCC) at 10 (E.D. Va. June 23, 2008) citing *Boyd v. Bulala*, 905 F.2d 764 (4th Cir. 1990).  In order to determine if a moving party has a meritorious defense, "the trial court must have before it more than mere allegations that a defense exists." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ); *see also Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.,*953 F.2d 17, 21 (1st Cir. 1992). Bissonnette clearly has more than mere allegations that a defense exists, but rather an attorney malpractice settlement whereby Podlaski admitted to advising Bissonnette to submit the book without pre-publication review and a sworn deposition where Podlaski admits to advising Bissonnette that based on his review of the book and its content, Bissonnette would not need to submit the manuscript for pre-

publication review as indicated in the proposed language to Bissonnette's contract in an email to the publishing company:

> Although the author has no legal obligation to submit the manuscript to any agency of the U.S. Government for review or approval, at the publishers option the publisher may direct the author to submit the manuscript for review…

Podlaski Dep. p. 66.  The inclusion of this passage in Podlaski's email demonstrates two things: that Podlaski issued his legal opinion that Bissonnette was not required to submit the manuscript, as well as the fact that Bissonnette was willing to submit the manuscript if the publisher disagreed with Podlaski.

Additionally, Podlaski further stated in his sworn deposition he misstated information on his sworn interrogatories to the DOJ further supporting the claim of Podlaski's false statements and manipulation of the matter. (Podlaski Dep. p.29)

The United States contends that Bissonnette cannot rely on the defense of advice of counsel as a defense to breach of contract citing a *Elridge v. Gordon Bros. Grp., LLC*, 863 F3d 66, 88 (1st. Cir. 2017) ("proving breach of contract claim does not (repeat, does not) depend on the breaching parties mental state").  Bissonnette would argue that the reliance on counsel was indeed the reason for the contractual breach and the interference of counsel caused the breach.  In *Sysdyne Corp v. Rousslang*, 860 N.W. 2d 347, 348 (Minn. 2015) acknowledged a justification defense may be satisfied by a defendant's good-faith reliance on advice of counsel, providing legal advice is obtained through reasonable inquiry whereby the defendant in *Sysdyne* conducted a reasonable inquiry into the enforceability of a contract and honestly believed, based on the advice of their counsel, that the agreement was unenforceable.  *Id.* Virginia Supreme Court also recognizes tortious interference with contract.  Bissonnette, in an effort to comply with his contractual duties, sought the advice of Podlaski, a 20-year retired army officer, who counseled authors through the

9

pre-publication process.  Podlaski admitted in his deposition to helping other authors through the publication process without submitting the book to the Government further admitting his role in Bissonnette's failure to submit when he stated:

> The Men, the Mission and Me was written by Peter Blabber, my client, and no we did not send it for official review by DoD…[Eric] Haney, Inside Delta –not vetted; Lieutenant Boykin, Never Surrender -not vetted. Charlie Beckwith, Delta Force – Not vetted.[4]

Podlaski Dep. p. 213.

Bissonnette was acting in a reasonable prudent manner when seeking counsel to ensure he did not breech his duties to the United States Government.  Furthermore, in *Bocek v. JGA Assocs., LLC*, 1:11-cv0546 (JCC/JFA), at 37 (E.D. Va. March 23, 2016) the court stated reliance of counsel, though not an absolute defense, does weigh against the award.  Also see *Flippo v. CSC Assocs. III*, 262 Va. 48, 58-59, 547 S.E.2d 216, 223 (2001) ("We agree that good faith reliance on the advice of counsel is relevant, but it is not an absolute defense to the imposition of punitive damages.").

Finally, as mentioned above, there are "exceptional circumstances" present allowing Bissonnette to move for vacatur of the Consent Decree. Bissonnette is not attempting to second guess his litigation tactics but rather revealing the corrupt actions of both the DOJ and Podlaski. At no point could Bissonnette have anticipated his former counsel turning over all documents to the DOJ revealing Podlaski's role in the manuscript not being submitted for pre-publication review all the while continually lying to both the DOJ and him regarding his involvement. Worse than Podlaski lying is the fact the DOJ possessed the evidence to quickly prove that Podlaski was lying

---

[4] In his deposition, Podlaski would not confirm whether Haney, Boykin or Beckwith were his clients or not but stated the books were not vetted -"I don't think they were vetted because they have information I think should not be in there."

yet apparently never asked him any difficult questions and, in fact, used Podlaski's continued false denial to fraudulently induce Bissonnette into agreeing to a Consent Decree.

## II.     The Undisputed Facts Demonstrate that Bissonnette is Entitled to Summary Judgment.

The United States contends Bissonnette's Motion to Vacate and Summary Judgment cannot be used to relitigate the case. Bissonnette does not intend to relitigate the case on merits but rather show the exceptional circumstances to which Bissonnette is entitled to relief under Rule 60(b).

Defendant admits to failing to correctly apply LCvR 56(B) however, Defendant did comply with the substance as to LCvR 56(B) considering there was a single issue of material fact which was clearly stated in the Statement of Facts.  The case at hand is unique in that Defendant is seeking to vacate a Consent Decree which the single issue was Defendant's detrimental reliance on his attorney and move for Summary Judgment on the issue.  The government relies on *CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13CV346, 2015 WL 4717256, at *4 & n.3 (E.D. Va. Aug. 7, 2015) arguing Bissonnette is not entitled to Summary Judgment based on the violation of LCvR56(B), however *CertusView* is distinguished from this case in that the Plaintiff in *CertusView* failed to acknowledge the error and completely and blatantly overlooked the issue when raised in the Defendant's Opposition. Additionally, the Courts have ruled that even if a movant fails to comply with LCvR 56(B), the court has the inherent equitable authority to resolve substantive issues raised. *Willams v. Gradall Col,* 90 F. Supp. 442,444 (E.D. Va. 1998).  With only one issue of material fact it would be equitable for the Courts to resolve the matter.  Though LCvR 56(B) requires compliance with its instruction regarding proper filing, the Courts have concluded it will not "elevate form over substance." *White v. Golden Corral of Hampton,* LLC, Civil Acton No. 3:13cv27, 2014 WL 1050586 at 3-4 (E.D. Va. Mar. 14, 2014) Defendants acknowledge the

failure to properly apply LCvR 56(B) however, with the courts permission we would ask leave to amend our brief to comply with the local rules.

The United States arguments hinges on Bissonnette's acknowledgement and acceptance of responsibility regarding the failure to submit *No Easy Day* for pre-publication review and therefore Bissonnette is not entitled to Summary Judgment. (Opposition page 15) however this argument is without merit.  Bissonnette has acknowledged that he now understands that failing to submit the manuscript was an error, which is the public statement that the Government needed to serve a deterrent to others.  However, Bissonnette never admitted that he knew that he was wrong at the time that he followed Podlaski's advice.  Quite the opposite, he maintains that he thought he was fulfilling his obligations, on the advice of his attorney, but now recognizes that advice to have been wrong and therefore his actions in reliance upon that advice was similarly wrong.

Accepting responsibility for an error and admitting to the mistake, does not negate from the material issue of fact that Bissonnette relied on the erroneous advice of counsel to ensure he was in full compliance with his contractual obligations.  Summary Judgment is appropriate only if no genuine issue of fact exists. FRCP 56(c).  A genuine issue of fact exists "if a reasonable jury could return a verdict for a nonmoving party" *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Considering Bissonnette's reliance on the egregious and erroneous advice of counsel, which Podlaski directly admitted in deposition, there is no genuine issue of material fact. For the United States to continue to enforce a Consent Decree knowing the Government Attorneys have a higher responsibility to seek justice is in direct contradiction to what our government stands for.

## CONCLUSION

For the foregoing reasons, the Court should grant Bissonnette's motion to vacate the consent decree and grant Motion for Summary Judgment.

Dated: September 21, 2020 Respectfully submitted,

_____/s/_____
Sarah Ikena, Esq.
Parlatore Law Group, LLP
1655 Fort Myer Drive, Suite 700
Arlington VA 22209
sarah.ikena@parlatorelawgroup.com
785-223-2948
(212) 202-4787 Fax

_____/s/_____
Timothy C. Parlatore, Esq. (*pro hac vice*)
Parlatore Law Group, LLP
tim.parlatore@parlatorelawgroup.com
One World Trade Center, Suite 8500
New York, NY 10007
(212) 679-6312

## CERTIFICATE OF SERVICE

 I hereby certify that on September 29, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to the government.

_____/s/_____ _____
Sarah Ikena