IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16-cv-1070 (RDA/IDD) |
| ) | |
| MATTHEW BISSONNETTE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Matthew Bissonnette's ("Defendant") Rule 60 Motion to Vacate the Consent Decree and for Summary Judgment ("Motion"). Dkt. Nos. 5; 6. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendant's Motion; the brief in opposition submitted by Plaintiff United States ("Plaintiff"), Dkt. 12; and Defendant's Reply, Dkt. 15; the Motion is DENIED for the reasons that follow.

### I. BACKGROUND

Defendant Matthew Bissonnette ("Defendant") served as a chief petty officer and special warfare operator in the United States Navy. Dkt. 1 ¶ 5. He also was a member of the Navy SEAL team that carried out the 2011 raid that killed Osama Bin Laden. *Id.* ¶ 14; Dkt. 6. After his discharge from the military, Defendant later wrote a book about his experiences titled *No Easy Day: The Firsthand Account of the Mission That Killed Osama Bin Laden*, published in 2012 under the pseudonym Mark Owen. Dkt. 1 ¶ 14. But publication of the book came with a problem:

Defendant failed to clear the book for review with the Department of Defense ("DoD") before *No Easy Day* was published.  *Id. ¶¶* 15-16.

While Defendant served in the Naval Special Warfare Development Group, he agreed that he would submit to the Government for pre-publication security review any writing or other materials that contained or purported to contain Sensitive Compartmented Information, or SCI. Dkt. 1 ¶ 7; *see also* DoD Directive 5230.09, Clearance of DoD Information for Public Release §§ 2.a, 4.b, 4.f (Aug. 22, 2008).  As a condition of him being granted access to classified information while assigned to the Naval Special Warfare Development Group, Defendant signed four documents: (1) a Classified Information Non-Disclosure Agreement; (2) a Sensitive Compartmented Information Nondisclosure Statement; (3) a Sensitive Compartmented Information Indoctrination Memorandum; and (4) a Personal Attestation, which stipulated that he understood his responsibility to protect classified national security information.  Dkt. 1 ¶¶ 5, 11. By signing these documents, Defendant agreed to submit for security review and clearance any proposed book related to military matters or national security.  He also agreed that, should he ever disclose classified information without Government authorization, the Government would be entitled to all royalties or other payments earned from the disclosure.  *Id.* ¶ 8.

On August 19, 2016, Plaintiff brought this civil action against Defendant for breach of contract and fiduciary duty related to his decision to publish *No Easy Day* without first seeking pre-publication review from DoD.  Dkt. 1.  In the Complaint, Plaintiff also alleged that Defendant had given leadership presentations without receiving departmental permission to use slides containing content related to his Navy service.  *Id.* ¶¶ 18-20.  The parties negotiated a proposed resolution to the case, and on September 23, 2016, this Court entered a Consent Decree to resolve the action.  *See* Dkt. 2 ¶ 11.

The Consent Decree imposed certain requirements on Defendant. He agreed to issue a public statement "acknowledging that he was required to seek pre-publication review of *No Easy Day* and that he made a mistake by failing to do so." *Id.* at 2. In the Consent Decree, the Government released Defendant from civil liability related to the book and the slide decks he used without authorization. *Id.* ¶ 9. In exchange, Defendant agreed to "pay to the United States any and all revenues, gains, profits, royalties, and other financial advantages derived by [him], or derived by [him] in the future, from the sale, serialization, republication rights in any form, television or movie rights, and other distribution for profit of *No Easy Day*." *Id.* ¶¶ 3, 9. He further agreed to pay the Government all proceeds he had already earned from *No Easy Day*. *Id.* ¶ 5. Finally, the parties stipulated that Defendant would pay back a portion of the proceeds from leadership presentations he gave. *See id.* ¶ 7.

Later, Defendant filed a malpractice suit against his former attorney—Kevin Podlaski—and his firm, Carson Boxberger LLP on November 9, 2015 based on the advice he received from Podlaski regarding whether to submit *No Easy Day* and the leadership presentation slides for pre-publication review. Dkt. 6, 5; *see also Bissonnette v. Podlaski*, No. 1:15-CV-00334-SLC, 2018 WL 2688583, at *6 (N.D. Ind. June 5, 2018). On June 29, 2018, Defendant reached a settlement agreement with Podlaski and his firm. *Id.* In that settlement agreement, according to Defendant, Podlaski and his firm acknowledged their role in misguidedly advising Defendant that he need not submit his book for DoD pre-publication review. *Id.*; *see also* Dkt. 5-1, 3.

On August 20, 2020, Defendant moved to vacate this Court's 2016 judgment.[1] He argues that vacating the consent decree is warranted by the attorney malpractice settlement, which

---

[1] Defendant first filed a motion to vacate and for summary judgment on August 19, 2020, Dkt. 5, which is identical in substance to the motion he filed along with a corrected notice of hearing on August 20, 2020. *See* Dkt. 6.

3

materially alters the factual basis for the Consent Decree. Dkt. 6, 7-8. According to Defendant, enforcing the Consent Decree is inequitable because his detrimental reliance on counsel's faulty advice runs against the public interest. Dkt. 6, 8. Defendant also argues that summary judgment should be entered in his favor as the facts "indisputably establish" that he relied in good faith on the advice of his counsel. Dkt. 6, 9-11. He maintains that his good-faith reliance on his counsel's advice, not any intent to breach his obligations, formed the basis for his actions and that he is therefore entitled to summary judgment. *Id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) authorizes a district court to award relief from a final judgment under certain discrete circumstances. These grounds are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Any relief granted under Rule 60(b), however, is discretionary. *See id.* ("[T]he court may relieve a party . . . from final judgment . . ."); *see also Neumann v. Prudential Ins. Co. of Am.*, 398 F. Supp. 2d 489, 492 & n.8 (E.D. Va. 2005). In cases "[w]here a party moves to modify a consent decree under Rule 60(b)(5), the Fourth Circuit has found that the movant 'must satisfy a heavy burden.'" *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07-cv-612, 2008 WL 2557999, at *3 (E.D. Va. June 23, 2008) (quoting *Thompson v. United States*, 220 F.3d 241, 248 (4th Cir. 2000) (internal quotation marks omitted)).

A party seeking to vacate a consent decree must also satisfy several threshold requirements. "A movant seeking relief under Rule 60(b) must first make four threshold showings before the

court will even consider the six itemized grounds of relief enumerated" in Rule 60(b). *Coomer v. Coomer*, No. 98-2236, 2000 WL 1005211, at *4 (4th Cir. July 20, 2000) (per curiam). These four threshold showings require that the moving party demonstrate: "(1) timeliness; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances." *Buffalo Wings Factory*, 2008 WL 2557999, at *2 (E.D. Va. June 23, 2008) (citing *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)). "District courts must rigorously examine these four predicate requirements because we have characterized Rule 60(b) as 'extraordinary' and to be used only in 'exceptional circumstances.'" *Coomer*, 2000 WL 1005211, at *4 (citing *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)).

"After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)." *Dowell*, 993 F.2d at 48. One of the subsections of Rule 60(b) permits a court to grant relief if "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). This provision usually applies to modifications of injunctions or consent decrees and may be granted if the party seeking relief "can show 'a significant change either in factual conditions or in the law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 337, 384 (1992)); *see also Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 122 (4th Cir. 2000).

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary

5

judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## III.   ANALYSIS

Defendant brings his Rule 60(b) Motion for Relief from Judgment under the third clause of subsection (5)—"applying [the judgment] prospectively is no longer equitable"—arguing that a subsequent settlement agreement in a malpractice action with his former attorney constitutes a change in facts sufficient to warrant vacatur of the consent decree. Dkt. 6, 7-8. The Court will first determine whether Defendant has made the requisite Rule 60(b) threshold showing before turning to the question of whether he has demonstrated a ground for relief.

### A.   Rule 60(b) Motion to Vacate

#### 1. Threshold Showing

As noted *supra*, the party moving to vacate a judgment through a Rule 60(b) motion must show (1) timeliness; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances. *See Dowell*, 993 F.2d at 48. The Court must scrupulously examine these threshold requirements mindful of the Fourth Circuit's caution that relief under Rule 60(b) is an "extraordinary" remedy. *Compton*, 608 F.2d at 102.

##### a. Timeliness

With respect to the Motion's timeliness, Defendant has moved to vacate the judgment nearly four years after the Consent Decree was entered and more than two years after he settled his malpractice suit with the attorney who advised him of his contractual obligations regarding *No Easy Day*. Dkt Nos. 1; 2; 6. Four considerations guide the Court's decision on this component of the *Dowell* threshold showing. First, the text of Rule 60(b) provides that a Rule 60(b)(5) motion

"must be made within a reasonable time"—a more flexible standard than the one-year bar applied to motions brought under subsections (b)(1)-(3).  Fed. R. Civ. P. 60(c) (indicating that those motions must be brought "no more than a year after the entry of the judgment or order or the date of the proceeding").

Second, on a Rule 60(b)(5) motion, the Court assumes that the alleged date that a change of facts occurred, and not merely the date that the underlying judgment was entered, is relevant to the timeliness analysis.  This view accords with this Court's acknowledgement that "Rule 60(b)(5) motions may be brought at any time."  *Hanan v. United States*, 402 F. Supp. 2d 679, 687 (E.D. Va. 2005).

Third, the moving party must offer a "valid reason" for any delay.  *Nat'l Org. for Women v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995).

And fourth, Defendant argues—and Plaintiff concedes—that he first attempted to negotiate a modification to the Consent Decree in April of 2019.  Defendant renewed that effort with Plaintiff in July of 2020 before bringing the vacatur motion.  *See* Dkt. 12, 11 n.6; Dkt. 15, 7.

Having examined Defendant's Motion, the Court concludes that with regard to the timeliness of his claim, Defendant has stated a good-faith basis for his delay in filing a Rule 60(b) motion.  For more than twelve months, Defendant attempted to negotiate an out-of-court modification to the Consent Decree with Plaintiff before litigating the matter, a choice the Court is unwilling to punish by denying Defendant's Motion as untimely.  *See id.*  In many cases, of course, a moving party that delays bringing a Rule 60(b) motion will be unable to carry that burden.  *See, e.g.*, *Operation Rescue*, 47 F.3d at 669 (upholding district court's determination that motion for relief under Rule 60(b)(5) was untimely when moving parties delayed almost a year after intervening Supreme Court opinion was issued); *McLawhorn v. John W. Daniel & Co.*, 924 F.2d

7

535, 538 (4th Cir. 1991) (upholding denial of Rule 60(b) motion after moving party delayed filing for three and a half months); *Hanan*, 402 F. Supp. 2d at 687-88 (denying Rule 60(b)(5) motion brought 19 months after an alleged change in facts occurred). But when assessing the timeliness of a Rule 60(b)(5) motion, "[w]hat constitutes a reasonable time is dependent on the particular facts of the case in question." *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999); *see also Moses v. Joyner*, 815 F.3d 163, 167 (4th Cir. 2016) ("Standards such as 'reasonable time' . . . reflect the considerable latitude of judgment our system reposes in trial courts."). Here, Defendant attempted to broker a modification to the Consent Decree with Plaintiff for more than a year, a time period that included unparalleled public health conditions that surely complicated negotiations.[2] Considering these particular facts, the Court does not find that Defendant's Motion is untimely.

### b. Lack of Unfair Prejudice to Plaintiff

The Court also considers whether "a lack of unfair prejudice to the opposing party" justifies vacating the Consent Decree. *Dowell*, 993 F.2d at 48. Plaintiff argues that vacating the Consent Decree would prejudice the United States and harm the public interest. Dkt. 12, 11-12. For his part, Defendant argues that justice would be served by setting aside the judgment because his subsequent malpractice suit settlement with his former attorney demonstrates that the Consent Decree was inequitable. Dkt. 15, 7-8. Defendant's contention, were it the applicable standard that courts apply under Rule 60(b), would "open up to re-examination any judgment memorializing a settlement if in hindsight the settlement might seem inequitable." *Schwartz v. United States*, 976 F.2d 213, 218 (4th Cir. 1992) ("Rule 60(b)(5) simply cannot be read so as to expose each settlement

---

[2] The COVID-19 pandemic began in March 2020, causing considerable disruption to ordinary life, business operations, and government agencies across the country.

to equitable re-examination[.]"). So easily setting aside final judgments serves neither the public interest nor the cause of judicial administration. *See id.* ("We do not think that the courts can function on such a basis."). Defendant has therefore failed to demonstrate that no unfair prejudice would result from vacating the Consent Decree.

### c. Meritorious Defense

Under the next *Dowell* factor, the Court must determine whether Defendant has offered "a meritorious defense." 993 F.2d at 48. Defendant argues that he justifiably relied on his former counsel's advice when he failed to follow his contractual obligations. *See* Dkt. 6, 2. He fails to marshal any authority, however, demonstrating that good-faith reliance is a valid defense to the causes of action Plaintiff brought in this case: breach of contractual and fiduciary duties. *See* Dkt. 1 ¶¶ 22-33. The cases Plaintiff relies upon involved different causes of action, including some that required evidence of specific intent. *See* Dkt. 6, 9. No such showing of specific intent is required to prove a breach of contractual and fiduciary duties, however.

Neither can the Consent Decree be set aside on the basis of mistake. When Plaintiff entered the Consent Decree, he acknowledged that he was required to seek pre-publication review for *No Easy* Day, conceded that he made a mistake in failing to do so, and agreed to release a public statement saying as much. *See* Dkt. 2. This Court has recognized that Consent Decrees are akin to contracts: "'[c]onsent decrees . . . are issued by the court pursuant to an agreement of the parties. A consent decree is therefore 'in some respects contractual in nature,' but the equitable decree based on the agreement 'is subject to the rules generally applicable to other judgments and decrees.'" *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 381 n.27 (E.D. Va. 2009), *aff'd*, 333 F. App'x 733 (4th Cir. 2009). "Mistake" is a well-accepted defense in contract law. When the mistake is not mutual, however, a contract may only be set aside for unilateral mistake if the other

contracting party committed fraud. *See Ward v. Ward*, 239 Va. 1, 3 (1990). But Defendant does not allege he was defrauded when he entered the Consent Decree, and there is no evidence the mistake was mutual. The Court finds, then, that Defendant has failed to tender a meritorious defense that would justify setting aside the Consent Decree.

### d. Exceptional Circumstances

Finally, the Court examines whether Defendant has demonstrated "exceptional circumstances" that warrant relief from the prior judgment. *Dowell*, 993 F.2d at 48. First, although the parties dispute this factor in their brief, the case law does not uniformly suggest that this *Dowell* factor is a threshold requirement for a Rule 60(b)(5) motion in cases where the moving party does not also move for relief under the "catchall" provision of Rule 60(b)(6). *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (holding that a moving party may invoke Rule 60(b)(6) in "'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)"); *see also Sec. & Exch. Comm'n v. Tsao*, 671 F. App'x 157, 158 (4th Cir. 2016). Defendant cites only Rule 60(b)(5) as a basis for relief, *see* Dkt. 6, 5-6, and the Court therefore assumes that this *Dowell* element does not apply at the threshold stage of Defendant's Rule 60(b) motion.

To the extent Defendant relies upon "exceptional circumstances" as a basis for relief, the Court is unpersuaded. That so few decisions have vacated a judgment under Rule 60(b) due to exceptional circumstances suggests that this standard is quite demanding. *See Buffalo Wings Factory*, 2008 WL 2557999, at *5 (collecting cases). Defendant agreed to enter the Consent Decree after engaging in thorough negotiations, electing to forgo profits from his book because he did not comply with his contractual obligation to seek pre-publication review. Dkt. 2, 2. Years after that agreement, Defendant still admits his "failure to obtain a proper pre-publication review"

10

and "to follow his contractual obligations." Dkt. 6, 2. Nevertheless, Defendant's argument rests on the fact that he has now finalized a separate malpractice settlement with his former attorney regarding the advice he received. *Id.* Defendant has pursued the remedy available to him—a legal malpractice action—but the settlement of that case, significantly one that does not include Plaintiff, does not constitute an exceptional circumstance that would justify overturning the judgment in this matter. Defendant therefore falls short of the threshold showing *Dowell* requires for this factor.

### 2. Change of Facts

The Court is thus caused to analyze the merits of Defendant's claim for relief notwithstanding its determination that he has failed to establish all but one of the threshold showings required for his Rule 60(b)(5) Motion. Under the clause of Rule 60(b)(5) permitting relief when "applying [the judgment or order] prospectively is no longer equitable," "relief is appropriate upon a showing of 'a significant change either in factual conditions or in law.'" *Horne v. Flores*, 557 U.S. 433, 451 (2009). Defendant identifies the settlement agreement that he reached with his attorney as the relevant change in circumstance, contending that "the assumptions both parties relied upon have significantly changed" and that "[t]he Settlement with [former counsel] is a significant change in the basis for the Consent Decree." Dkt. 6, 7-8. In addition, he cites deposition testimony from that legal malpractice action in support of his argument. Dkt. 15, 9-11.

Alas, the evidence related to the malpractice settlement agreement is insufficient to establish a change in factual conditions. The only document related to the settlement agreement that Plaintiff provides indicates that Defendant "has acknowledged his responsibility for publishing the book without a review by the Government" and that Defendant's former attorney and his firm "acknowledge their role in that decision[.]" Dkt. 5-1, 3. Furthermore, Defendant began his efforts to sue Podlaski for legal malpractice before the judgment he now challenges was

11

entered, filing two malpractice actions against his former attorney before the parties entered the Consent Decree.[3]  *See* Dkt. 12, 7.

Comparatively, in *Thompson*, 220 F.3d at 241, the only relevant development following the Consent Decree was a newly issued report opining that conditions at a site made it unlikely that the original modernization plan would be economically viable. Consequently, *Thompson* held that the desire for new construction was a circumstance contemplated and anticipated by the parties at the time they entered the decree. *Id.*

That same logic applies here: Defendant's malpractice argument was contemplated at the time the parties entered the Consent Decree, barring Defendant from obtaining relief on that basis now. Defendant admits as much in his Motion, which states that he "has continually maintained he relied upon the advice of counsel" in publishing his book without pre-publication review, including "[a]t the time [the] Consent Decree was entered into," *id.* at 7; *see also* Dkt. 5-1. As Plaintiff notes, Defendant publicly attributed his reliance on his attorney's faulty advice in an August 2016 interview with National Public Radio and a November 2014 appearance on the television program 60 Minutes. *See* Dkt. 12, 8. These statements further support the conclusion that relief is unwarranted because Defendant contemplated the precise argument he now marshals in this Rule 60(b) Motion at the time he entered the Consent Decree in August 2016.

Viewed against the backdrop of controlling precedent in cases involving consent decrees, Defendant's rationale for changed circumstances is also insufficient under Rule 60(b)(5). In *Rufo*,

---

[3] The first malpractice action was dismissed for lack of personal jurisdiction in 2015. *See Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 629 (S.D.N.Y. 2015). Defendant brought his second malpractice suit more than nine months before the parties entered the Consent Decree. *See Bissonnette v. Podlaski*, 2018 WL 2688583, at *6 (N.D. Ind. June 5, 2018) ("On November 9, 2015, Bissonnette filed his complaint in this case alleging that Podlaski committed legal malpractice in advising him not to submit a manuscript of the Book for prepublication review[.]").

for example, there was no significant change warranting vacatur of a consent decree where litigants "were undoubtedly aware" of a case that "was pending when they signed the decree." 502 U.S. at 388. Neither, as *Thompson* instructs, is a reason for vacatur that "existed before the entry of the consent decree" a change in circumstances within the meaning of Rule 60(b)(5). 220 F.3d at 247-48. The Court acknowledges that Defendant has now reached a settlement in the malpractice case he had already brought when he entered the Consent Decree. At its core, Defendant's position on new facts and assumptions is based on a "change in opinion about the effect of unchanged facts." *Thompson*, 220 F.3d at 247. But that does not constitute a "significant change in factual conditions" that makes enforcing the judgment "no longer equitable." *Agostini*, 521 U.S. at 215; Fed. R. Civ. P. 60(b)(5).

Furthermore, vacating the Consent Decree at this point stands in perfect tension with the purposes of Rule 60(b), which is "intended to protect parties neither from their lawyers' own negligence . . . nor from the undesirable results that flow from a poorly chosen litigation strategy." *Am. Lifeguard Ass'n, Inc. v. Am. Red Cross*, No. 92-2460, 1994 WL 144321, at *4 (4th Cir. 1994) (per curiam) (internal citations omitted). And the Supreme Court has observed that a moving party "cannot be relieved of such a choice because hindsight seems to indicate to him that his decision . . . was probably wrong." *Ackermann v. United States*, 340 U.S. 193, 198 (1950) (affirming denial of Rule 60(b) relief to litigant who declined to appeal judgment). Defendant has therefore failed to carry the "heavy burden" Rule 60(b)(5) imposes on the moving party. *Thompson*, 220 F.3d at 248.

B. Summary Judgment Motion

Defendant also appends a Rule 56 Motion for Summary Judgment to his Rule 60(b) Motion. Dkt. 6, 8-11. The Court cannot grant Defendant relief under Rule 56, however, because

13

his Motion for Summary Judgment is deficient in two respects. First, there is no basis for entering summary judgment in this closed case. Defendant cannot relitigate the merits of this case on a Rule 60(b)(6) motion. *See Horne*, 557 U.S. at 447 ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests . . . ."). Second, Defendant has failed to comply with Local Civil Rule 56(b), which requires that a summary judgment brief "include a specifically captioned section listing all material facts as to which [he] contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed[.]" Loc. Civ. R. 56(b). The Court must therefore deny Defendant's Motion for Summary Judgment.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Vacate the Consent Decree and for Summary Judgment is DENIED. Dkt Nos. 5; 6.

It is SO ORDERED.

Alexandria, Virginia
March 24, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge